# KENNETH WARD LAND v. CONTINENTAL CASUALTY COMPANY.

170 N. W. (2d) 568.

September 5, 1969—No. 41316.

*Danforth & Allen* and *Richard D. Allen,* for appellant.

*Cant, Haverstock, Gray, Plant & Mooty* and *James S. Simonson,* for respondent.

Heard before Knutson, C. J., and Nelson, Otis, Rogosheske, and Peterson, JJ.

OTIS, JUSTICE.

This action is one to construe those provisions of a group disability policy which deal with deductions or credits for collateral payments made under Workmen's Compensation and Social Security Acts. The insurer, Continental Casualty Company, appeals from an order and judgment of the district court construing the policy in favor of the insured employee, Kenneth Ward Land. The employee filed a notice of review as to one paragraph of the district court's order.

There are presented for review two issues. The first is whether workmen's compensation payments, which were suspended by the compensation carrier under its subrogation rights against a third party, constituted "an amount paid or payable under workmen's compensation" so as to be deductible from disability payments. We hold that they did.

The second issue is whether it was proper for the trial court to construe the provisions of the disability policy containing the words "subject to a maximum monthly indemnity of $1,000.00." We hold that it was not.

Plaintiff Land was a personnel manager for the Pillsbury Company, earning $1,041.67 a month, when on August 6, 1963, he was disabled in an automobile accident arising out of and in the course of his employment. Continental wrote the policy in question and insured Land in June 1964, effective December 10, 1964. On October 30, 1966, Land received a third-party settlement of $23,000. After attorney's fees and costs were deducted, $14,819.76 remained. By order of the Industrial Commission dated November 22, 1966, Travelers Insurance Company, Pillsbury's compensation carrier, was awarded $9,772.55 by virtue of its subrogation rights under Minn. St. 176.061. Because Land's recovery exceeded the compensation carrier's liability up to the date of the Industrial Commission order, the commission further authorized the suspension of compensation pay-

ments for a period of 60 weeks at the rate of $45 a week between November 1, 1966, and December 27, 1967.

■ As to the first issue, the question is whether the lump-sum payment to which Travelers was subrogated constituted "an amount paid or payable under workmen's compensation" so as to be deductible from Continental's payments within the meaning of the following language of its policy with Land:

> "MONTHLY
> ACCIDENT
> INDEMNITY
> "60% of
> salary*,
> subject to a
> maximum
> monthly
> indemnity
> of
> $1,000.00**.

"*The term 'Salary' shall mean the monthly salary (exclusive of bonuses, incentives, commissions and overtime earnings) the Insured Employee received from the Employer immediately prior to the date of the accident or commencement of disability from sickness.

"**Less any amount paid or payable under Workmen's Compensation, Occupational Disease Act or Law, or any benefits paid or payable to the employee or any payments for which his dependents may qualify as a result of the employee's disability under the Social Security Act, except in no event will the minimum benefit payable under this program be less than 10% of the employee's salary as defined."

The trial court by amended order held as follows:

"(3). That the phrase used in the said Schedule of Benefits, 'paid or payable', includes workmen's compensation benefits

which are suspended under the provisions of the Industrial Commission order, Exhibit C to the Complaint;

"(4). That plaintiff is entitled to judgment against the defendant in the amount of $45.00 times the number of weeks between November 1, 1966 and the entry of judgment herein, with interest as provided by law, together with his costs and disbursements."

Although the relief granted in paragraph (4) was that sought by Land, the holding of paragraph (3) was contrary to his contention with respect to the first issue raised. Consequently, Land has served notice of review under Rule 106, Rules of Civil Appellate Procedure, as to paragraph (3). The court's apparent inconsistent holdings can be reconciled by reference to its decision with respect to the second issue, as to which we reverse.

Land argued in the trial court that the language of the policy is ambiguous and thus must be construed against the insurer. He asserted that as long as the compensation benefits are suspended by the commission they cannot be "payable" within the meaning of the policy. We do not agree. Minn. St. 176.061 permits the employer to bring an action against a third party to assert his subrogated rights or entitles him to reimbursement for compensation payments recovered by the employee directly against a third party. The language which is particularly pertinent is found in § 176.061, subd. 5, as follows:

"* * * If the action against such other party is brought by the injured employee or his dependents and a judgment is obtained and paid and settlement is made with the other party, the employer may deduct from the compensation payable by him the amount actually received by the employee or dependents after deducting costs, reasonable attorney's fees, and reasonable expenses incurred by the employee or dependents in making collections or enforcing liability."

As we construe the statute, merely because compensation payments were suspended for 60 weeks, during which Land's third-

party recovery was applied on compensation under Travelers' subrogation rights, they did not lose their character as payments due under the compensation act. They remained amounts which Travelers was obliged to pay to Land and to which it was entitled to reimbursement from the third-party tortfeasors. The lump-sum payment was, in effect, the property of Travelers to the extent Travelers was obliged to pay Land. The suspension arrangement was simply a practical and convenient device, condoned by the parties and the Industrial Commission, to simplify bookkeeping and minimize administrative work and expense. Theoretically, Travelers might have adopted the cumbersome procedure of paying Land each month the $45 due under the Workmen's Compensation Act and securing in return from Land the same amount to which Travelers was subrogated out of the sum which Land received from the third-party tortfeasors. With such a procedure it would be difficult for Land to argue that these payments were not deductible within the meaning of the Continental policy.

Hence, we have concluded that the amounts credited to Travelers each month under its subrogation rights remained compensation payments "paid or payable" under the act, notwithstanding the fact that no money actually changed hands. Travelers' liability continued throughout the 60-week period. It recognized that obligation prior to November 1, 1966, and subsequent to December 27, 1967, by actual monthly compensation payments to Land. There is no logical reason for treating the subrogation credit any differently during the suspension period, and we do not believe the disability policy between Continental and Land intended otherwise.

■ The second issue is whether the trial court should have construed the words "subject to a maximum monthly indemnity of $1,000.00."

Land's salary at the time of the accident was $1,041.67. He was entitled to $195 a month workmen's compensation and $225 a month social security benefits. The trial court construed the

policy to grant Land $580 a month under Continental's disability policy on the theory that this amount of disability, plus social security and workmen's compensation, did not exceed $1,000 and that the policy should be read to permit a combination of these three items if they did not exceed $1,000. Continental, on the other hand, argues that the $1,000 maximum does not apply to the sum of these three items but applies only to the maximum amount which can, under the policy, represent 60 percent of a salary. Graphically, the two positions may be illustrated thus:

*Continental's contention:*

|  |  | Per Month |
|---|---|---|
| 60% of $1,041.67 = |  | $ 625 |
| Less – Social Security | $225 |  |
| Workmen's Compensation | 195 |  |
| Total Deduction – |  | $ 420 |
| Disability due from Continental |  | $ 205 |

*Land's contention:*

|  |  | Per Month |
|---|---|---|
| Maximum due under policy = |  | $1,000 |
| Less – Social Security | $225 |  |
| Workmen's Compensation | 195 |  |
| Total Deduction – |  | $ 420 |
| Disability due from Continental (Less than 60% of $1,041.67) |  | $ 580 |

Because we are of the opinion that the second issue was not properly before the court, we do not find it necessary to review the trial court's construction of the policy. This was a declaratory judgment action in which both parties moved for summary judgment without offering testimony. Significantly, plaintiff's

complaint makes no mention of the second issue decided by the court. Paragraph VIII of the complaint states:

"* * * Specifically, the matter in dispute between plaintiff and defendant is whether, at least during the period of suspension provided for in the Industrial Commission order of November 22, 1966, the benefits to which plaintiff is otherwise entitled from defendant under and pursuant to Exhibits A, B and B-1 should be reduced by the amount of $45.00 per week during said time."

Plaintiff's prayer asks only for judgment in a sum representing the multiple of $45 and the number of weeks elapsing between April 16, 1967, and the date of judgment.[1]

At the conclusion of the hearing in support of its motion, plaintiff prepared a trial brief which did raise the following issue:

"Whether the language relating to workmen's compensation in the second footnote [of the policy] applies to the maximum monthly indemnity, rather than to the 60 per cent of salary figure."

Because Continental did not squarely object to the issue being raised, Land now argues that it was litigated by consent within the meaning of Rule 15.02, Rules of Civil Procedure. While we agree that Continental did not protect its record as vigorously as it should have, we are constrained to hold that under the facts of this case the matter should not have been raised for the first time in a post-trial brief. Unlike litigation where evidence is taken and both sides have had an opportunity to present testimony on an issue not raised in the pleadings, this case was presented primarily as a question of law. On appeal, Continental points out quite persuasively that the construction sought by Land and decided by the trial court required additional evidence and testimony in order to arrive at the intention of the parties.

---

[1] April 16 was the approximate date the action was begun. The court, however, computed the amount by reference to November 1, 1966, when the suspension became effective.

Among other things, it is argued that the negotiations between employer and employee which resulted in the drafting of the policy would be germane, as well as the practical construction adopted over the period of time during which the policy was administered on behalf of disabled employees. Beyond that, the decision reached by the lower court would expose Continental to a greatly increased potential liability to several thousand employees. By the same token, were we to pass on the merits of the second issue and rule against this policyholder, our decision, if not res judicata as to other policyholders, would certainly amount to persuasive precedent. The pleadings have given no notice to third persons of the question here raised, and we are reluctant to construe a matter so important to other employees on such a casual presentation as that made to the trial court. Consequently, we reverse on the second issue and hold that it was not properly before the trial court but may be relitigated in a subsequent action without prejudice to either party.

Reversed.